## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JERRELL ARMONT,

       Plaintiff,

v.                                      Case No.  3:19-cv-334-J-34MCR

K12 (FLORIDA CYBER CHARTER
ACADEMY – FLCCA),

       Defendant.

_____/

### REPORT AND RECOMMENDATION[1]

    **THIS CAUSE** is before the Court on Defendant's Motion to Compel Arbitration and Stay Proceedings ("Motion") (Doc. 6), Plaintiff's response in opposition thereto ("Response") (Doc. 17), and Defendant's reply ("Reply") (Doc. 23).  The undersigned has reviewed the filings in this case and finds that there is no need for a hearing.  For the reasons stated herein, it is respectfully **RECOMMENDED** that the Motion be **GRANTED**.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

## I.   Background

On March 22, 2019, Plaintiff, Jerell Armont, proceeding *pro se*, filed a Complaint for Employment Discrimination ("Complaint") in this Court against her former employer, K12 (Florida Cyber Charter Academy – FLCCA).  (Doc. 1.)  The Complaint alleged employment discrimination, unequal terms and conditions of employment, retaliation, and harassment, on account of Plaintiff's race, color, gender/sex, and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634.  (*See id.*)

On April 16, 2019, in lieu of filing a responsive pleading to the Complaint, Defendant filed the present Motion, seeking to compel arbitration of Plaintiff's claims and to stay these proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.  (Doc. 6.)   In response, Plaintiff filed a Motion to Strike Defendant's "Motion to Compel Arbitration and Stay Proceedings" and Set Case for Trial (Doc. 13), which the Court construed as a response in opposition to Defendant's Motion to Compel Arbitration.  (*See* Docs. 16 & 17.)

According to Defendant, Plaintiff entered into a valid and enforceable Agreement to Arbitrate with K12 ("Arbitration Agreement"), which, it argues, covers Plaintiff's employment-related claims.  (Doc. 6-1 at 5-7.)  Defendant supports its Motion with the Declaration of Pamela J. Billings, a Human Resources Business Partner and business records custodian for Defendant. (*See id.* at 2-3.)

2

On May 10, 2019, Plaintiff filed her Response in opposition to the Motion, along with her own affidavit alleging that although she signed the Arbitration Agreement with K12 as an employee, the Agreement was nullified when she resigned from her position at K12.  (*See Docs.* 14 & 17.)  Moreover, Plaintiff claims that she was rehired without signing a new employment contract or arbitration agreement.[2]  (*See* Doc. 14 at 1.)  On August 16, 2019, with leave of Court, Defendant filed its Reply accompanied by the Second Declaration of Pamela J. Billings and additional supporting documents.  (*See* Doc. 23.)  The Motion was referred to the undersigned on April 17, 2019.[3]  Accordingly, this matter is ripe for review.

## A.   Relevant Facts

On May 28, 2017, Plaintiff accepted Defendant's offer for employment as a Guidance Counselor, a full-time position with an annual base salary of $46,125.00 plus benefits, beginning June 5, 2017.  (*See* Doc. 23 at 15.)  On that same date, Plaintiff also signed the Arbitration Agreement and initialed every page thereof.  (Doc. 6-1 at 5-7.)  The Arbitration Agreement contained fifteen clauses, including an Agreement to Arbitrate, stating as follows:

> K12 Inc. and Employee agree to submit to confidential, final, and binding arbitration any dispute, claim or controversy that may arise between them arising from or relating to Employee's employment or

---

[2] Plaintiff's Response was initially accompanied by an affidavit, which the undersigned considers in conjunction with the Response.  (*See* Doc. 14.)

[3] On June 17, 2019, the Court *sua sponte* entered an order staying discovery pending a ruling on the Motion.  (Doc. 21.)

the termination of Employee's employment, including but not limited to claims arising from contract, tort, public policy, constitution, statute or ordinance, or involving the interpretation of this Agreement or any policy or practice of K12 Inc.  For example, and not for purposes of limitation, the parties agree to arbitrate all tort claims of any nature whether negligent or intentional; constitutional claims including privacy; claims under federal, state, county or municipal statute or ordinance, including any state anti-discrimination statute, Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination in Employment Act of 1967 as amended, the Americans with Disabilities Act, the Employee Retirement Income Security Act, federal and state family and medical leave laws, and any other law or regulation relating to employment, employment discrimination, employee wages, or benefits, except as provided in paragraph 2 below.

(*Id.* at 5.)  Plaintiff asserts that Defendant did not execute the Arbitration Agreement, which Defendant does not dispute.  (*See* Doc. 17 at 1 (citing Doc. 6-1); *see also* Doc. 23 at 4-5.)

In her Complaint, Plaintiff alleges that "[f]rom June 2017 to January 2018, [she] was employed by [Defendant] in the capacity of a Guidance Counselor." (Doc. 1-1 at 1.)  Plaintiff claims she resigned in July 2017, "but agreed to stay on part-time until they found a Counselor."[4]  (*Id.*)  Plaintiff avers that Defendant

---

[4] Plaintiff attached a copy of her July 5, 2017 resignation email to Marcus Moore, stating the following:

I want to clarify our conversation this morning regarding my position here as your High School Guidance Counselor.  I would like to change my position here as an On-Site Full Time Counselor to a Full Time Virtual Counselor.  I feel that it is necessary to educate myself on the needs of the K-8 population for which I have no experience.  I was not comfortable with the idea of not being able to help my school in these grade levels due to the fact that I have no experience in those grade levels.

I respectfully request a trial opportunity to show that I can be an effective and efficient High School Counselor here at Florida Cyber [Charter] in a [v]irtual capacity.  *If the school is unable to keep me on staff as a Virtual*

asked Plaintiff "what it would take to keep [her]" and that she requested a salary

of $60,000 annually and to be allowed to work from home two to three days a

week.  (*Id.*)  Plaintiff claims that "after returning to full time employment in

August[,] [she] did not receive the salary agreed on nor was [she] allowed to work

from home 2-3 days."  (*Id.*)  In her Affidavit, Plaintiff declared that she was

rehired by Defendant as of August 16, 2017, but when she "requested new

contract documentation" she "only received a 'Salary Change' form requesting

[her] signature."  (Doc. 14 at 1.)  Plaintiff claims that starting in October 2017,

Defendant engaged in discriminatory and retaliatory actions against her.  (Doc. 1-

1 at 2-7.)  As a result, Plaintiff contacted the human resources department at K12

and, on December 18, 2017, she filed a formal complaint.  (*Id.* at 6; *see also* Doc.

17-4.)  Plaintiff alleges that despite her communications with the human

resources department, "things continued to get worse" and she was forced to

resign from her position with Defendant on January 30, 2018.  (Doc. 1-1 at 7.)

On September 27, 2018, Plaintiff filed a Charge of Discrimination with the

U.S. Equal Employment Opportunity Commission ("EEOC"), which issued a

---

*Full Time Counselor[,] I would like the opportunity to work with you on a*
*Part Time or Contractual basis* to help get the school up to speed. . . .
If an agreement cannot be reached[,] then my official last day of
employment will be Friday, July 21, 2017, if I'm allowed to stay on and
assist till [sic] then.  I am open to conversation and will work hard and
tirelessly for this school until my last minute of employment. . . .  I await
the school's decision.

(Doc. 17-2 at 2 (emphasis added).)  In response, Marcus Moore stated: "As I mentioned
to you in person, I would hate to see you go.  I will accept your last day as being July
21, 2017.  In the meantime, if something can be worked out for you to continue with us,
I will let you know."  (*Id.* at 3.)

5

Notice of Right to Sue letter on December 27, 2018.  (Doc. 1-1 at 4-5, 8.)  In her

EEOC complaint, Plaintiff claimed that the discriminatory acts by Defendant

occurred between September 2017 and February 2018.  (See *id.* at 4.)

Specifically, Plaintiff alleged the following:

> I am an African American Female, who was employed by the
> Respondent as an Education Counselor until my constructive
> discharge due to a hostile work environment created by my direct
> supervisor, Mr. Moore, Head of Academics, (African American)
> because of my [r]ace and my age.  This change of work environment
> occurred after Mr. Moore requested me [sic] to do work originally
> assigned to others because, he believed, I was older and more
> experienced than my similarly situated Caucasian colleagues. [] I
> was forced to work over Christmas break, while other[] similarly
> situated employees were not affected[.]  Mr. Moore also pressured
> me to take on more responsibilities as a Lead/Senior Counselor[,]
> but I refused because I just wanted to remain a "Worker Bee."  Mr.
> Moore subsequently singled me out and subjected me to aggressive
> verbal attacks and desperate [sic] treatment in front of my
> colleagues.  I complained [to] management about this situation and
> the academic errors and discrepancies[] I had found on [sic] student
> records, but nothing was done.  In retaliation, the Respondent
> placed unwarranted written and verbal warning [sic] in my employee
> jacket after I refused to perform unethical acts that went against my
> Professional Teaching Certification.  The Respondent (Human
> Resources) refused to forward my complaint to EEO Counsel
> claiming that they would handle the situation.  I was eventually
> constructively discharged, after much abuse and humiliation.
> . . .
> I believe I was discriminated against because of my [r]ace, African
> American, and my [a]ge in violation of the Civil Rights Act of 1964,
> as amended and [t]he Age Discrimination in Employment Act of
> 1967 (ADEA).
>
> In addition, I believe Mr. Moore discriminated against me because
> "we" were black [and] should have stuck together inste[a]d of my
> [sic] reporting his action to our superiors and Human Resources
> (whistleblowing).

(*Id.* at 10-11.)

**B.    The Parties' Arguments**

In its Motion, Defendant argues that Plaintiff voluntarily executed the Arbitration Agreement presented to her as part of the offer for employment with Defendant and that the Arbitration Agreement is valid and enforceable.  (Doc. 6 at 4.)  Moreover, Defendant claims that the Arbitration Agreement applies to Plaintiff's claims since the "Arbitration Agreement covers all disputes, claims and controversies related to Plaintiff's employment with K12 or the termination of such employment."  (*Id.*)  Defendant also claims that Plaintiff's Title VII and ADEA claims of discrimination and harassment on the basis of her race, color, gender and age, and retaliation, are expressly listed as covered claims under the Arbitration Agreement.  (*Id.* at 5 (citing Doc. 6-1 at 5.).)  According to Defendant, "Plaintiff's claims clearly arise out of the terms of her employment and are within the scope of the Arbitration Agreement."  (*Id.*)  As such, Defendant requests that the Court stay the case and refer the claims to arbitration.  (*Id.* at 6.)

In response to Defendant's Motion, Plaintiff first counters that "there is no valid agreement/contract or enforceable agreement to arbitrate between" the parties.  (Doc. 17 at 1.)  Although Plaintiff acknowledges that she signed the Arbitration Agreement, she claims she "never received an executed copy of that agreement signed by Defendant or any of its representatives."  (*Id.*)  Plaintiff asserts that Defendant failed to sign the Arbitration Agreement and, thus, cannot show the existence of a valid arbitration agreement where "it was the intent of both parties to sign this agreement."  (*Id.* at 2, 5.)  Plaintiff maintains that she

7

resigned in writing on July 5, 2017, effective July 21, 2017, and that Marcus Moore, Head of Academics, accepted her resignation. (*Id.* at 2.) Therefore, Plaintiff argues, "[a]s of July 21, 2017, [she] was no longer an employee of K12, Inc., and her termination of employment and the acceptance of her resignation would have nullified the Arbitration Agreement of May 28, 2017." (*Id.*)

Plaintiff also claims that as of July 21, 2017, she worked for Defendant as an independent contractor and not as an employee. (*Id.*) Thus, Plaintiff contends that her claims are not subject to arbitration because she "had no contracted hours, times or specific dates in which she was required to work nor had she signed any arbitration paper work as a 'contractor' with the Defendant and had not signed any arbitration agreements with the Defendant." (*Id.*) Next, Plaintiff argues that Defendant rehired her on August 10, 2017, purportedly under a new contract, but when she "requested paperwork to support her rehire," Defendant sent her a "Salary Change Notice"[5] rather than a "new employment

---

[5] The August 10, 2017 Memorandum from Marcus Moore and Julie Hawkins to Plaintiff, listing "Salary Change" in the reference line, stated as follows:

Jerrell,

We appreciate your contributions to K12. You have been a tremendous asset, and we look forward to our continued professional relationship. Congratulations!

We are pleased to offer you the following:

New Salary/Rate: Your revised salary/rate is $52,000 on an annualized basis subject to standard payroll deductions and paid on the Company's regular payroll dates in accordance with the Company's normal payroll practices.

This change will be effective August 16, 2017 and you will see this increase reflected on your August 31, 2017 paycheck. Please return a signed copy of this memo to Julie Hawkins . . . . An additional copy should be retained for your records. . . .

package and arbitration agreement."  (Doc. 17 at 1-2; Doc. 17-3 at 2.)  Plaintiff

argues that the "Salary Change" Memorandum constituted a "new contract for

employment," but that "[a] new Arbitration Agreement was 'never' signed or

entered into by the Plaintiff [or] the Defendant and does not cover lifetime

reappointments or renewed employment."  (*Id.* at 2-3.)

Plaintiff also argues that she is not bound by the Arbitration Agreement

because she "does not meet the Defendant[']s definition of an 'employee or

terminated employee' as specified in the arbitration agreement."  (*Id.* at 3-4.)

Plaintiff contends that while the Arbitration Agreement applies to "employees and

employees who have been terminated," she argues that she was neither an

employee of Defendant during the relevant time period, nor a "terminated

employee as specified in [the] agreement" at the time she filed her Complaint.

(*Id.* at 3)  Rather, Plaintiff claims she was "a 'former employee' who resigned,"

which, she maintains, "is not covered under" the Arbitration Agreement.  (*Id.*)

Plaintiff also notes that she resigned twice and did not rescind her resignations.

(*Id.*)

Plaintiff also contends that her claims are not subject to arbitration

because Defendant failed to comply with the terms of the Arbitration Agreement.

(*Id.* at 3.)  Plaintiff alleges that she attempted, in good faith, to address the

alleged discriminatory and hostile acts by Defendant in accordance with

---

(Doc. 17-3 at 2.)

Defendant's conflict resolution policy as required under section three of the Arbitration Agreement.  (*Id.* at 4 ("Paragraph three of the Arbitration Agreement states 'Before arbitrating any claim between them, the parties agree to attempt in good faith to resolve any dispute covered by or relating to this Agreement according to the Conflict Resolution policy set forth by the Defendant.").)  Citing to a March 2018 email exchange between Plaintiff and Lorraine Medeiros, a Human Resources Business Partner with Defendant, Plaintiff alleges that "Defendant had no intention to arbitrate or meet with Plaintiff to resolve issues or conflict as identified in the Defendant's arbitration agreement . . . ."[6]  (*Id.* at 5.)

Additionally, Plaintiff argues that Defendant failed to invoke its purported right to arbitration within 12 months of the cause of action, identified by Plaintiff as her December 18, 2017 formal complaint, as required under the fourth clause of the Arbitration Agreement.  (*Id.* ("The arbitration agreement states in paragraph four under Time Limits for involving Arbitration that 'If the claim cannot be resolved through the informal Conflict Resolution procedure, either party wishing to invoke arbitration under this Agreement must do so within 12 months of when the cause of action arose, or within the time period provided under law for commencement of an action in a court of law, whichever expires earlier.'").)

---

[6] In the email exchange, Ms. Medeiros stated that a "full internal investigation" of Plaintiff's allegations had been conducted and concluded, confirmed that K12's Human Resources Department had not forwarded Plaintiff's complaint to the EEOC, and advised Plaintiff that if she wished to file a complaint with the EEOC, she would have to file the complaint herself.  (*See* Docs.17-7 & 17-8.)

In its Reply, Defendant asserts that the Arbitration Agreement remains in effect.  (Doc 23 at 1.)  First, Defendant denies Plaintiff's claim that "she had any break in employment with K12 from her date of hire on June 5, 2017, until her resignation on February 10, 2018."[7]  (*Id.* at 2.)  Defendant argues that "even assuming Plaintiff's factual assertions are true, which they are not, Plaintiff's claim that her purported resignation 'nullified' the Arbitration Agreement is not supported by the terms of the Arbitration Agreement or the law."  (*Id.*)  Defendant points to payroll records showing that between July and August 2017, "Plaintiff was always paid as an employee of K12, receiving her regular semi-monthly salary during this time."  (*Id.*)  Defendant also notes that Plaintiff failed to provide any evidence that she became an independent contractor between July 21 and August 10, 2017, and argues that the Salary Change Memorandum "refutes Plaintiff's contention" where it "state[d] that K12 would like to continue its professional relationship with Plaintiff and provide[d] for a salary increase for the 2017-2018 academic year."  (*Id.* (citing Doc. 17-3).)  Thus, Defendant argues, since Plaintiff's employment was continuous, "the Arbitration Agreement she signed at the commencement of her employment remained in full force and effect, and is enforceable by this Court."  (*Id.* at 2.)

---

[7] Defendant attached the Second Declaration of Pamela J. Billings (Doc. 23 at 10-11) in support of its Reply, along with supporting documentation including the employment contract signed by Plaintiff on May 28, 2017 (*id.* at 15-17), payroll records for Plaintiff from July 1, 2017 to September 15, 2017 (*id.* at 19-23), and Plaintiff's W-2 tax forms for 2017 and 2018 (*id.* at 25-26).

Defendant also asserts that the express language of the Arbitration Agreement fails to "support Plaintiff's argument that her purported resignation 'nullified' the Arbitration Agreement" where section one of the agreement states "that the parties 'agree to submit to confidential, final, and binding arbitration any dispute, claim or controversy that may arise between them arising from or relating to **Employee's employment or the termination of Employee's employment**.'"  (*Id.* at 3 (emphasis in the original) (citation omitted).)  Defendant also argues that:

> [T]he Arbitration Agreement does not contain a defined term, a termination provision, or any other language that provides that [it] ends upon Plaintiff's first resignation.  To the contrary, the plain language of the Arbitration Agreement reflects the parties' intent that all periods of Plaintiff's employment and all terminations of Plaintiff's employment are covered by the Arbitration Agreement.

(*Id.*)

Next, Defendant argues that although it did not sign the Arbitration Agreement, it is enforceable since it satisfies the essential elements of a contract.  (*Id.* at 4.)  Defendant contends that "[a]n arbitration agreement is enforceable against a signatory to the agreement, even though the party seeking to enforce the agreement did not execute it, where, as here, there was an offer, acceptance, and sufficient specification of essential terms."  (*Id.*)  Defendant relies on the plain language of the Arbitration Agreement to show that Defendant's signature was not required to make the Arbitration Agreement binding on the parties.  (*Id.*)  According to Defendant, it intended to be bound by

12

the Arbitration Agreement once signed by Plaintiff, which would have demonstrated mutual assent to arbitration.  (*Id.* at 4-5.)

Defendant argues that "Plaintiff's misinterpretation of the Arbitration Agreement does not render the Arbitration Agreement unenforceable."  (*Id.* at 5.) Defendant contends that Plaintiff's argument that the Arbitration Agreement does not apply to her because she resigned, as opposed to being terminated, is incorrect as there is no language in the Arbitration Agreement supporting "Plaintiff's argument that a resignation is not included within the meaning of the term 'termination.'"  (*Id.*)  According to Defendant, Plaintiff's claim that the Arbitration Agreement does not apply to her Complaint because she was not employed by Defendant at the time of filing also fails because "[c]ourts routinely compel arbitration of employment claims filed after the plaintiff's termination of employment."  (*Id.* at 6.)

As to Plaintiff's argument that arbitration is improper because Defendant failed to comply with section three of the Arbitration Agreement, requiring parties to engage in pre-arbitration conflict resolution, Defendant argues that the claims should be subject to arbitration and the issue regarding the conflict resolution provision should be decided by the arbitrator.[8]  (*Id.*)  Defendant also summarily

---

[8] Defendant argues that "Plaintiff elected to skip the pre-arbitration conflict resolution process and filed the Complaint with this Court instead.  Had Plaintiff sought to resolve her dispute through the conflict resolution process, K12 would have proceeded in that manner."  (Doc. 23 at 6.)  Moreover, Defendant argues that "no statutory mechanism is available to compel Plaintiff into pre-arbitration procedures, nor could K-12 compel arbitration before Plaintiff filed a court action."  (*Id.*)

13

dismisses Plaintiff's argument regarding Defendant's alleged failure to comply with the Arbitration Agreement's provision that the parties initiate arbitration within 12 months of the cause of action as irrelevant.  (*Id.*)

## II.    Standard

The FAA[9] which was originally enacted in 1925, aimed "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  Under the FAA, pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a "liberal federal policy favoring arbitration."  *AT & T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011).

The FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed, neglected, or refused to

---

[9] By its terms, the Agreement at issue is governed by the FAA. (*See* Doc. 6-1 at 7 ("The parties agree that all controversies or claims arising out of or relating to this arbitration procedure, its interpretation, performance or breach, including without limitation the validity, scope, and enforceability of this Agreement, will be governed by the Federal Arbitration Act . . . .").)

comply with an arbitration agreement." *Gilmer*, 500 U.S. at 25 (citing 9 U.S.C.

§§ 3 & 4).  When a party moves to compel arbitration pursuant to an

arbitration agreement:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default, the court shall hear and determine such issue.  Where such an issue is raised, the party alleged to be in default may on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.  If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.  If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4.  Through this provision, Congress expressly assigned the duty of

deciding issues concerning the "making of the arbitration agreement" to the

courts.  *Id.*; *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561

U.S. 287, 296 (2010) (stating it is "well settled that where the dispute at issue

concerns contract formation, the dispute is generally for courts to decide").

   "Under both federal and Florida law, there are three factors for the court to

consider in determining a party's right to arbitrate: (1) a written agreement exists

between the parties containing an arbitration clause; (2) an arbitrable issue

15

exists; and (3) the right to arbitration has not been waived." *Curbelo v. Autonation Benefits Co.*, Case No.: 14-CIV-62736, 2015 WL 667655, *2 (S.D. Fla. Feb. 17, 2015) (internal citations and quotation marks omitted). "[P]arties cannot be forced to submit to arbitration if they have not agreed to do so. Thus, 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.'" *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (internal citations omitted). If a party has not signed an agreement to arbitrate, before sending the case to arbitration, "*the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language." *Id.*[10]

---

[10] In *Chastain*, the Eleventh Circuit stated: "To make a genuine issue entitling the [party seeking to avoid arbitration] to a trial by jury [on the arbitrability question], an unequivocal denial that the agreement had been made [is] needed, and some evidence should [be] produced to substantiate the denial." 957 F.2d at 854 (internal citations and quotation marks omitted). The court further stated: "A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Id.* at 855.

However, more recently, the Eleventh Circuit clarified that it no longer relies on this test:

> [I]n the nearly quarter-century since *Chastain* and [*Wheat, First Securities, Inc. v. Green*, 993 F.2d 814 (11th Cir. 1993)], no published decision of [the Eleventh Circuit] has cited either case for the proposition that the burden is on the party denying the existence of an arbitration agreement to deny its existence "unequivocally" and substantiate that denial with proof.[] Instead, we defer solely to applicable state-law principles in determining the quality and quantum of evidence required to deny or prove the existence of an agreement.

*Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 n.1 (11th Cir. 2017) (internal quotation marks omitted) (citing *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016), which stated, in relevant part, that since the Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), the Eleventh

"In deciding whether the parties agreed to arbitration, the Court applies state law governing the formation of contracts while at the same time, taking into consideration the federal policy favoring arbitration."  *Corbin v. Affiliated Computer Servs.*, No. 6:13-cv-180-Orl-36TBS, 2013 WL 3804862, *3 (M.D. Fla. July 19, 2013).  The present case involves an employment relationship in Florida and both parties appear to recognize that Florida law controls the question of whether a valid arbitration agreement exists.

"To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove 'offer, acceptance, consideration and sufficient specification of essential terms.'"  *Schoendorf v. Toyota of Orlando*, No. 6:08-cv-767-Orl-19DAB, 2009 WL 1075991, *6 (M.D. Fla. Apr. 21, 2009) (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)).  "The proponent of the contract must prove these elements by a preponderance of the evidence."  *Schoendorf*, 2009 WL 1075991 at *6; *see also Corbin*, 2013 WL 3804862 at *3 ("As the party moving to compel arbitration, the burden is on Defendants to make a *prima facie* case showing the existence of an agreement to arbitrate.").

"Florida uses an objective test to determine whether a contract may be enforced."  *Smith v. Florida*, Civ. No. 2:07-cv-631, 2010 WL 11507193, at *1 (M.D. Fla. Feb. 23, 2010) (citations omitted).  As such, "the test of the true

---

Circuit has consistently held that "state law governs the issue of the existence of an agreement to arbitrate under the FAA").

interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Sundial Partners, Inc. v. Atl. St. Capital Mgmt. LLC*, Case No. 8:15-cv-861-T-23JSS, 2016 WL 943981, at *4 (M.D. Fla. Jan. 8, 2016) (report and recommendation adopted by 2016 WL 931135 (M.D. Fla. Mar. 11, 2016)) (citations and quotation marks omitted).

Additionally, "while the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." *Sundial Partners*, 2016 WL 943981, at *5 (citing 9 U.S.C. § 2; *Caley*, 428 F.3d at 1368).  Likewise, "under Florida law, a contract may be binding on a party despite the absence of a party's signature." *Id.*  (citing *Gateway Cable T.V., Inc. v. Vikoa Constr. Corp.*, 253 So.2d 461, 463 (Fla. Dist. Ct. App. 1971).).  "The lack of a signature is not fatal to the enforceability of the arbitration agreement at issue. Because the object of a signature is to show mutuality or assent, a contract may be binding on a party notwithstanding the absence of a signature if the parties assented to the contract in another manner."  *Id.*  "[W]hen an arbitration agreement is not signed, we look to a party's words and conduct to determine whether the party assented to the agreement."  *Santos v. General Dynamics Aviation Servs. Corp.*, 984 So.2d 658, 661 (Fla. Dist. Ct. App. 2008) (finding that plaintiff's continued employment after receipt of the dispute resolution policy sufficiently demonstrated his assent to the terms of the arbitration agreement, and that there was sufficient consideration because "the agreement created a mutual obligation

to arbitrate").[11]   "Florida law permits the offeror to specify the terms and manner of acceptance."  *Grant v. Morgan Stanley Smith Barney LLC*, Case No. 16-81924-CIV-MARRA, 2017 WL 1044484, *3 (S.D. Fla. Mar. 20, 2017) (citations omitted).

"Acceptance of an arbitration agreement may be done by performance, which includes continued employment."  *Id.* (citations omitted); *see also Sundial Partners*, 2016 WL 943981, at *5 (collecting cases finding acceptance of an agreement through performance, and determining that plaintiff's continued performance after receipt of the finder agreement demonstrated assent to the arbitration provision in that agreement).  "Accordingly, a party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time." *Dorward v. Macy's, Inc.*, Case No. 2:10-cv-669-FtM-29DNF, 2011 U.S. Dist. LEXIS 78639, *26 (M.D. Fla. July 20, 2011).

In determining whether the parties agreed to arbitrate a dispute, the court must apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Mitsubishi Motors Corp. v. SolerChrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (internal quotation marks omitted); *see also Grant*, 2017 WL 1044484 at *2 ("Federal substantive law of arbitrability determines which disputes are within the scope of the arbitration clause.").  Further, "[a] party may be deemed to have waived its right

---

[11] Mutual promises and obligations are sufficient consideration. *Corbin*, 2013 WL 3804862 at *14.

to arbitrate a dispute 'when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'"  *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990).

Finally, "a summary judgment-like standard is appropriate in determining whether a trial is necessary under section 4 of the FAA." *Larsen*, 871 F.3d at 1308 (citing *Bazemore*, 827 F.3d at 1333).[12]  Under "this standard, a court may conclude as a matter of law that parties entered into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of the arbitration agreement. When there is no such dispute, a trial is unnecessary." *Id.*  "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Bazemore*, 827 F.3d at 1333.

The Eleventh Circuit "has consistently held that conclusory allegations

---

[12] "When [it is] apparent from a quick look at the case that no material disputes of fact exist[,] it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice.   In these circumstances, the [FAA's] summary trial can look a lot like summary judgment." *Bazemore*, 827 F.3d at 1333 (internal citations omitted).  In *Bazemore*, the Eleventh Circuit determined that defendant's motion to compel arbitration should have been denied, because defendant did not meet its burden under Georgia law to prove the existence and terms of the arbitration agreement it sought to enforce. *Id.* at 1332.  The court declined defendant's invitation to hold, "essentially, that a party cannot lose a motion to compel arbitration for failure to prove that an arbitration agreement exists without being afforded a second bite at the apple—an opportunity to prove the agreement's existence at trial." *Id.* at 1333. The Eleventh Circuit concluded: "As defendant offered no competent evidence to demonstrate the existence of a genuine issue of material fact concerning the existence of an arbitration agreement, its motion to compel arbitration must be denied as a matter of law without the need for a trial." *Id.* at 1334.

without specific supporting facts have no probative value" for a party resisting summary judgment."  *Id.* (internal quotation marks omitted); *see also Word v. AT & T*, 576 F. App'x 908, 916 (11th Cir. 2014) (per curiam) ("Because 'mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion,' Plaintiff's affidavit, standing alone, was not enough to survive Defendant's motion for summary judgment."); *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1304 (M.D. Fla. 2011) ("The Court can disregard an unsupported affidavit that contradicts the evidence.  Likewise, [c]onclusory factual allegations, even when under oath, are not sufficient to oppose a motion for summary judgment[.]'  'Conclusory, self[-]serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well[-]supported summary judgment or directed verdict.'").  Further, "entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Bazemore*, 827 F.3d at 1334 (citations omitted).

## III.  Discussion

Here, Defendant takes the position that the Arbitration Agreement executed by Plaintiff on May 28, 2017, upon accepting Defendant's offer of employment, is valid and enforceable and that Plaintiff's claims are within the scope of the Arbitration Agreement.  Plaintiff, on the other hand, opposes the Motion arguing that: (1) the Arbitration Agreement is invalid because it was never

signed by Defendant; (2) she is not subject to the Arbitration Agreement because she was not a "terminated employee" or Defendant's employee when she filed her Complaint in this Court; (3) Defendant failed to follow the terms of the Arbitration Agreement and thus cannot subject Plaintiff's claims to arbitration; and (4) the purported break in Plaintiff's employment nullified the Arbitration Agreement and that no new agreement to arbitrate was signed by the parties after Plaintiff was rehired.  The undersigned agrees with Defendant that the Arbitration Agreement is enforceable and finds that there are no genuine issues of material fact as to the formation or validity of the Agreement.

### A.    Agreement to Arbitrate

The undersigned finds that there is a valid written agreement to arbitrate between the parties.  The parties do not dispute that Florida law governs whether a valid arbitration agreement exists.  *See PNC Bank v. Maranatha Props. Inc.*, 5:15-cv-563-Oc-30RPRL, 2016 WL 279542, at *2 (M.D. Fla. Jan. 22, 2016) ("To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove offer, acceptance, consideration, and sufficient specification of essential terms . . . by a preponderance of the evidence."). Nevertheless, Plaintiff argues that the Arbitration Agreement is unenforceable because it was not signed by Defendant; however, the undersigned finds that this argument is without merit.  *See Seminole Cty. Tax Collector v. Domo, Inc.*, Case No. 6:18-cv-1933-Orl-40DCI, 2019 WL 1901019, at *6 (M.D. Fla. Feb. 12, 2019) ("Here, the last act necessary to complete the contract was its acceptance by

Plaintiff in Florida. . . .   While Defendant's representative may have affixed a

countersignature to the document in Utah after acceptance, the contract was

valid and enforceable upon Plaintiff's acceptance (in Florida) of Defendant's

offer.") (citing *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d

1089, 1092 (11th Cir. 2004) ("The last act necessary to complete a contract is the

offeree's communication of acceptance to the offeror.")).   In her Affidavit, Plaintiff

asserts that she signed the Arbitration Agreement on May 28, 2017.   (Doc. 14 at

1.)   Plaintiff's signature was the last act necessary to complete the contract as

evidenced by the language above the "Employee Signature" line stating:

"Employee's signature below represents the agreement and acknowledgement

that Employee has read and agreed to the terms of this Agreement to Arbitrate."

(Doc. 6-1 at 7.)   Therefore, Defendant has established that a valid agreement to

arbitrate was formed between the parties under Florida law.

Plaintiff's argument that there was a break in her employment and that her

resignation and rehiring somehow nullified the Arbitration Agreement is also

without merit.   While Defendant disputes that there was a break in Plaintiff's

employment, as evidenced by the payroll records showing continuous paychecks

and no change in Plaintiff's employee status during the period in question, it is

immaterial to the enforceability of the Arbitration Agreement whether Plaintiff

resigned and was subsequently rehired by Defendant.   Plaintiff does not

challenge the validity of the Arbitration Agreement beyond the missing signature

from Defendant; rather, she argues that the Arbitration Agreement was nullified

upon her resignation effective July 21, 2017 and, in essence, claims that it did not apply to her employment with Defendant after she resigned or after she was rehired.

However, the Arbitration Agreement "is silent on the issue" and "there is no language within the agreement that limits the arbitration agreement to apply to only one type of position with [Defendant] or only one time frame of employment." *See Ryan v. LP Fort Myers*, LLC, No. 2:14-cv-231-FtM-38CM, 2014 WL 3341306, at *3 (M.D. Fla. July 8, 2014) (rejecting plaintiff's argument that the arbitration agreement she signed upon being hired as a part-time employee was unenforceable because her part-time position ended, and, after a break in employment, she did not sign a new arbitration agreement when she was re-hired months later as a full-time employee). To the contrary, the Arbitration Agreement clearly indicates that "*any* dispute, claim or controversy that may arise between [the parties] *arising from or relating to Employee's employment or the termination of Employee's employment* . . . or involving the interpretation of this Agreement" shall be arbitrated. (Doc. 6-1 at 5 (emphasis added).) Like the Court in *Ryan*, the undersigned is not persuaded that the Arbitration Agreement was nullified by Plaintiff's purported break in employment and resolves any ambiguity regarding the scope of the Arbitration Agreement in favor of arbitration. *See Ryan*, 2014 WL 3341306, at *3. Furthermore, Plaintiff "has not identified, or even alleged, any agreement to revoke or alter the parties' agreement to arbitrate." *See Silvers v. Verbata, Inc.*, Case No. 5:17-cv-169-Oc-34PRL, 2018

24

WL 1863777, at *4 (M.D. Fla. Mar. 22, 2018) (report and recommendation

adopted by 2018 WL 1992204 (M.D. Fla. Apr. 27, 2018)).

### B.   Claims Subject to Arbitration

Next, the undersigned will briefly examine whether an arbitrable issue

exists and whether the right to arbitrate has been waived.  Here, the Arbitration

Agreement expressly covers:

> any dispute, claim or controversy that may arise between [the
> parties] arising from or relating to Employee's employment or the
> termination of Employee's employment, including but not limited to . .
> . claims under . . . any state anti-discrimination statute, Title VII of
> the Civil Rights Act of 1964 as amended, the Age Discrimination in
> Employment Act of 1967 as amended . . .  and any other law or
> regulation relating to employment, employment discrimination,
> employee wages, or benefits, except as provided in paragraph 2
> below.

(Doc. 6-1 at 5.)  Thus, the Court finds that Plaintiff's present action for alleged

employment discrimination under Title VII and the ADEA is covered by the

Arbitration Agreement and arbitrable.

To the extent Plaintiff raises Defendant's purported failure to comply with

the terms of the Agreement as rendering the Agreement unenforceable, the

undersigned finds that such arguments are to be addressed in arbitration.[13]  With

respect to any unresolved ambiguities as to whether Plaintiff's claims fall within

the scope of the Arbitration Provision, the undersigned again points to the well-

---

[13] The undersigned also rejects Plaintiff's arguments that the Arbitration
Agreement did not apply to her claims because she was not an "employee" at the time
she filed her Complaint or a "terminated employee" as meritless.

25

settled national policy requiring that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Cordoba v. DIRECTV, LLC*, No. 1:15-CV-3755-MHC, 2018 WL 5919588, at *2 (N.D. Ga. Nov. 9, 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Accordingly, the undersigned finds that Plaintiff's claims are within the scope of the parties' Arbitration Agreement.

Finally, the undersigned finds that Defendant has not waived its right to arbitrate.  "A party may be deemed to have waived its right to arbitrate a dispute 'when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990).  Here, Defendant did not waive its right to arbitration because it timely responded to the Complaint by filing the present Motion.  Based on the foregoing, the Court should compel arbitration.  9 U.S.C. § 3; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in the original).

## C.   Stay Pending Arbitration

Lastly, the undersigned also finds that it is appropriate to stay the case while arbitration proceedings are pending.  *See* 9 U.S.C. § 3.  "The FAA likewise provides that litigation may be stayed pending arbitration only if 'the applicant for

the stay is not in default in proceeding with such arbitration.'"  *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 n.17 (11th Cir. 2002) (citing 9 U.S.C. § 3).  Because the undersigned finds that Plaintiff's claims are subject to arbitration, and that Defendant has not waived its right to arbitration, the undersigned also respectfully recommends that the instant case be stayed pending the arbitration process.  *See id.*; *see also*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).   Thus, the parties should be directed to submit to arbitration and to file periodic reports with the Court on the status of arbitration, and the Clerk of Court should be directed to stay and administratively close the file pending the completion of arbitration.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Motion (**Doc. 6**) be **GRANTED**.

2.     The parties be directed to submit to arbitration as set forth in the Arbitration Agreement.

3.     The parties be required to file periodic reports on the status of arbitration.

4.     The Clerk of Court be directed to stay and administratively close the file pending the completion of arbitration.

**DONE and ENTERED** in Jacksonville, Florida, on December 26, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

27

Copies to:

The Hon. Marcia Morales Howard
United States District Judge

*Pro se* Plaintiff

Counsel of Record